IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ERIC L. HAMILTON, #20200212182, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19-cv-1347-SMY |
| | ) |
| DR. MOHAMMED SIDDIQUI, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Eric L. Hamilton, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. §1983, claiming his constitutional rights were violated while he was incarcerated at Menard Correctional Center. Hamilton alleges Defendants were deliberately indifferent to his medical needs and retaliated against him.

Now before the Court is Plaintiff's Motion for Summary Judgment on Count 1 against Defendant Dr. Mohammed Siddiqui (Doc. 112) and Defendants Dr. Mohammed Siddiqui, Dr. Stephen Ritz, Mary Jo Zimmer, and Wexford Health Sources, Inc. ("Wexford Defendants") Motion for Summary Judgment (Doc. 110). Each side opposes the respective motions (Docs. 119, 120). For the following reasons, Plaintiff's Motion is **DENIED** in its entirety, and the Wexford Defendants' Motion is **DENIED in part and GRANTED in part.**

### Facts

The following relevant facts are undisputed unless otherwise noted: In 2018, Plaintiff was incarcerated at Menard Correctional Center ("Menard") (Doc. 113-2 at p. 14). Dr. Mohammed Siddiqui ("Dr. Siddiqui") was the medical director at Menard during the relevant time period (Doc. 113-3 at p. 24, Lines 12-14 and p. 37, Lines 14-19). Dr. Stephen Ritz ("Dr. Ritz") was, at all

relevant times, Wexford Health Services, Inc.'s Dedicated Utilization Management Physician (Doc. 111-1 at p. 530). Mary Jo Zimmer ("Zimmer") was a nurse practitioner at Menard during the relevant time period (Doc. 111-5 at p. 12).

Plaintiff is a diabetic (Doc. 113-2 at p. 21). On January 1, 2018, Plaintiff was seen in diabetic clinic by Nurse Practitioner Michael Moldenhauer ("Moldenhauer") (Doc. 111-1 at pp. 582-583). The physical examination section notes Plaintiff's skin, extremities, foot sensation, and foot pulses were okay. *Id.* There were no notes or complaints of food pain or swelling at this visit. *Id.*

On March 28, 2018, Plaintiff sent a sick call slip to health care regarding wanting to be seen by an eye doctor and having lumps on his chest and head (Doc. 111-2 at p. 811). The sick call slip did not mention foot pain or swelling. *Id*. On March 30, 2018, Plaintiff was seen by a nurse in response to his March 28, 2018 letter (Doc. 111-2 at p. 017). There were no complaints of foot pain or swelling. *Id.*

On April 2, 2018, Plaintiff was seen by Moldenhauer in response to his March 28, 2018 letter (Doc. 111-2 at p. 018). There were no complaints of foot pain or swelling. *Id.* On April 7, 2018, Plaintiff was seen by a CMT (Doc. 111-2 at p. 019). There were no complaints of foot pain or swelling. *Id.* On April 10, 2018, Plaintiff was seen in the diabetic clinic again by Moldenhauer (Doc. 111-1 at pp. 584-585). The physical examination section notes Plaintiff's skin, extremities, foot sensation, and foot pulses were okay. *Id.* Plaintiff had callus/long thick toenails and he was referred to Dr. Siddiqui for a foot evaluation. *Id.* There were no notes of complaints by Plaintiff of foot pain or swelling. *Id.* On April 13, 2018, Plaintiff was scheduled to be seen for a foot evaluation but was instead seen by the eye doctor (Doc. 111-2 at p. 020). Plaintiff was then seen by a nurse. *Id.* There were no complaints of foot pain or swelling. *Id.* On April 16, 2018, Plaintiff

was seen by a nurse and there is no note of complaints of foot pain or swelling (Doc. 111-2 at p. 022).

On May 4, 2018, Plaintiff was seen by Dr. Siddiqui for a foot evaluation (Doc. 111-2 at p. 024; Doc. 111-3 at pp. 92-94, 101, 109-111, 190). Dr. Siddiqui noted that Plaintiff had bilateral hammertoes (bunions) but that they were cosmetic. *Id.* Dr. Siddiqui further noted that Plaintiff already had diabetic shoes and testified that Plaintiff must have told him that because he would not know the difference. *Id.* Dr. Siddiqui testified that Plaintiff did not complain of foot pain, foot swelling, or ulcerations/lesions because he didn't have any such indication in his notes from that visit. *Id.* Plaintiff testified that he did, in fact, complain of foot pain (Doc. 120-2 at pp. 47, 75).

On May 11, 2018, Plaintiff was again seen by Dr. Siddiqui for a physical (Doc. 111-2 at pp. 010-012; Doc. 111-1 at p. 528; Doc. 111-3 at pp. 122-123). Dr. Siddiqui noted Plaintiff's vascular, lower extremities, and skin were normal and that he would refer Plaintiff to podiatry for bilateral ingrown toenails. *Id.* Dr. Siddiqui noted that Plaintiff was a diabetic with neuropathy. *Id.* That same day, Dr. Siddiqui submitted Plaintiff's case to collegial for a referral to a podiatrist for the bilateral ingrown toenails of the big toes with intermittent bleeding in the left big toe. *Id.* Dr. Siddiqui testified that Plaintiff did not complain at this visit of foot pain or swelling or his notes would have indicated the same. *Id.* Plaintiff testified that he told Dr. Siddiqui that he was having food pain (Doc. 120-2 at p. 75).

On May 17, 2018, Plaintiff's case was discussed in collegial with Dr. Ritz (Doc. 111-1 at p. 530). Dr. Ritz requested more information be provided like what onsite interventions had been tried and failed and had the patient had a recent trial of antibiotics. *Id.*

On June 14, 2018, Plaintiff's previous referral was rediscussed in collegial with Dr. Ritz (Doc. 111-1 at p. 567). An alternative treatment plan (ATP) was developed for Dr. Siddiqui to

assess onsite and discuss in collegial after assessment. *Id.*

On June 12, 2018 Plaintiff filed an Offender's Grievance indicating that he had great pain in his right foot and pain shooting up his leg (Doc. 120-7). The grievance also indicated that he did not have diabetic shoes and that he had "not owned a pair of diabetic shoes since [his] incarceration." *Id.*

On June 14, 2018, Plaintiff was seen by a CMT at 8 p.m. (Doc. 111-2 at p. 026). Plaintiff requested that the CMT look at his toe. *Id.* It was noted by the CMT that Plaintiff's right second toe was swollen, hot with obvious cellulitis. The tip of the toe looked to have a white core and the skin was peeling off in multiple layers. *Id.* The swelling and heat extended into the top of the right foot. Id. Plaintiff was added to Dr. Siddiqui's call for the next morning. *Id.*

On June 15, 2018, in the morning, Plaintiff was seen by Dr. Siddiqui (Doc. 111-2 at p. 027). Dr. Siddiqui noted Plaintiff complained of pain and swelling in the right foot and right leg. Id. Dr. Siddiqui noted Plaintiff's right second toe was discolored and swollen with ulceration at the tip. *Id.* Plaintiff's dorsal pedis was not felt. *Id.* Dr. Siddiqui suspected gangrene of the second toe and cellulitis. *Id.* Dr. Siddiqui ordered the transfer of the Plaintiff to the hospital. *Id.*

On June 15, 2018, Plaintiff was seen at the SIH Memorial Hospital of Carbondale (Doc. 111-4 at pp. SIH 8-10, 82, 121). Plaintiff told the doctor he had a wound on his second right toe for approximately two weeks and over the last several days the would had been worsening. *Id.* The doctor examined Plaintiff and noted that Plaintiff's musculoskeletal exhibited no deformities. *Id.* Plaintiff was then seen by a podiatrist who noted no gross deformities to Plaintiff's lower extremities. *Id.* Plaintiff was diagnosed with osteomyelitis (bone infection) and soft-tissue sepsis (diabetic foot infection) in his second toe on his right foot, among other foot ailments (Doc. 120-15). Records reference that Plaintiff was given the option of conservative treatment or surgical

options. (Doc. 111-4 at pp. SIH 8-10, 82, 121). However, Plaintiff testified that he was never given both surgical (amputation) and conservative options (Doc. 120-1 at pp. 57, 59). Plaintiff ultimately had his toe amputated (Doc. 120-1 at pp. 57, 60).

On June 17, 2018, Plaintiff was discharged from the hospital with a prescription for doxycycline for 14 days and hydrocodone-acetaminophen as needed for up to seven days (Doc. 111-4 at p. SIH 73). Dr. Siddiqui wrote Plaintiff's prescription on the same day (Doc. 111-1 at p. 649).

Upon returning to Menard, Plaintiff was admitted to the infirmary where he stayed until June 20, 2018 (Doc. 111-2 at pp. 030, 032-034, 036, 038). While in the infirmary, records reflect that Plaintiff received his doxycycline and hydrocodone-acetaminophen (Doc. 111-1 at pp. 617, 621; Doc. 111-2 at pp. 033, 036; Doc. 111-5 at pp. 82-84). However, other records indicate that he was not given his prescribed antibiotics (Doc. 120-16) or pain medication (Docs. 120-17, 120-18 and Doc. 1).

On June 26, 2018, Plaintiff was approved for a post-op podiatry follow up by Dr. Ritz (Doc. 111-1 at p. 569, Doc. 111-2 at p. 045). The medical furlough clerk scheduled an appointment for Plaintiff for June 28, 2018 (Doc. 111-2 at p. 047). Plaintiff contends that the surgeon's order was for a post-op follow up for June 22, 2018 (Docs. 1, 120-21, 120-22).

On June 28, 2018, Plaintiff was seen by Nurse Practitioner Christine Lindsay ("Lindsay") who noted Plaintiff's wound area was healed (Doc. 111-2 at p. 049). Lindsay completed a dressing change and sent Plaintiff to the health care unit for suture removal. *Id.* Plaintiff was seen by a nurse who noted Plaintiff refused suture removal stating he wanted to wait for the specialist (Doc. 111-2 at p. 050). Plaintiff was scheduled to be seen by the specialist on July 2, 2018. *Id.*

On August 24, 2018, Warden Jacquelin Lashbrook stated that there was nothing in

Plaintiff's medical file that would allow him to have diabetic shoes (Doc. 120-30). She also indicated that Plaintiff was being referred to the doctor for an assessment to determine his need. *Id.* Three days later, Dr. Siddiqui submitted a diabetic shoe request for Plaintiff (Doc. 114). Plaintiff received diabetic shoes in October 2018 (Doc. 120-8).

Plaintiff filed six grievances relating to Menard's handling of his post-operative care (Docs. 120-7, 120-16, 120-17, 120-24, 120-25, 120-26). According to Plaintiff, Zimmer responded to Plaintiff's grievances by stating, "if [he] [kept] filing grievances, she was going to write plaintiff a ticket and [be] sent [] to segregation[.]" (Doc. 120-2 at pp. 65-66).

Plaintiff is proceeding on the following claims against the Wexford Defendants:

> **Count 1**: Eighth Amendment deliberate indifference claim against Dr. Siddiqui and Dr. Ritz pertaining to the alleged inadequate treatment Plaintiff received for his right foot from April 2018 until on or about June 15, 2018, when Plaintiff was referred for surgery;
>
> **Count 2**: Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc. for enacting a policy which prevented Plaintiff from receiving timely medical care; and,
>
> **Count 3**: Eighth Amendment deliberate indifference claim against Dr. Siddiqui, Dr. Ritz, and Zimmer pertaining to Plaintiff's post-operative medical care.
>
> **Count 4**: First Amendment retaliation against Zimmer for threatening to have Plaintiff placed in segregation for filing grievances.

(Doc. 15 at p. 6).

## Discussion

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha*

*County*, 391 F.3d 837, 841 (7th Cir. 2004). Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston*, 384 F.3d 838, 842 (7th Cir. 2004). Rather, the Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483.

The Eighth Amendment prohibits deliberate indifference to the serious medical needs of prisoners. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate alleging deliberate indifference must show that he faced a "substantial risk of serious harm," and that prison officials knew about that risk and disregarded it by "failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). Relatedly, an inmate proceeding on a claim of deliberate indifference to medical needs must offer evidence that he suffered from an objectively serious medical condition, and that the defendant knew of and disregarded a substantial risk of harm. *Murphy v. Wexford Health Sources Inc.*, 962 F.3d 911, 915 (7th Cir. 2020). An inmate may establish deliberate indifference to a serious medical condition by demonstrating that the treatment he received was "blatantly inappropriate." *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005).

Disagreement between an inmate and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). And courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor was exercising his professional judgment. *Roe v.*

*Elyea,* 631 F.3d 843, 857 (7th Cir. 2011); *see also Sain v. Wood,* 512 F.3d 886, 894–95 (7th Cir. 2008).

### Dr. Siddiqui

Plaintiff claims that Dr. Siddiqui was deliberately indifferent to his medical needs in failing to provide him adequate and timely medical treatment for his podiatric issues. In seeking summary judgment, both parties present disputed facts related to Plaintiff's treatment – what was said, when it was said, and how it was responded to. There is also a material issue of fact as to whether Dr. Siddiqui's initial request to collegial review for a podiatrist referral contained adequate information, and if not, whether that lack of information resulted in an unnecessary delay in Plaintiff's referral to a podiatrist and an exacerbation of his pain and suffering.

The parties also proffer competing expert opinions with respect to causation and the relation of Plaintiff's podiatric medical issues to his resulting pain and suffering. The credibility, weight, and inferences to be drawn from material disputed facts and competing expert opinions is a function of the jury – not the judge. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). For these reasons, both Plaintiff's Motion for Summary Judgment on Count 1 against Dr. Saddiqui and Wexford Defendants' Motion for Summary Judgment on behalf of Dr. Siddiqui on Counts 1 and 3 will be denied.

### Dr. Ritz

In his role as the Utilization Management Medical Director, Dr. Ritz was involved in two collegial reviews of Plaintiff's conditions between April 2018 and June 2018. Both collegial reviews for podiatric referrals were denied based on Dr. Ritz's requests for additional information concerning onsite interventions or the ATP that was prescribed. The extent to which Dr. Ritz had knowledge of Plaintiff's underlying medical and podiatric issues remains unclear from the record.

Moreover, the parties' arguments raise disputed issues of fact regarding Plaintiff's ingrown toenails and the osteomyelitis of his second toe that resulted in amputation and the relationship, if any, between the two, and rely on competing expert opinions regarding causation.

With respect to Plaintiff's post-operative care, the evidence proffered by Defendants is that Dr. Ritz approved a post-op podiatry follow-up on the same day the request was received from Dr. Siddiqui. At the same time, Plaintiff points to evidence that he was ordered by his surgeon to have a follow-up appointment on June 22, 2018, that he was not transported for that care, and that he made repeated requests for that follow-up. Given these disputed facts, summary judgment is improper on this point as well.

### Mary Jo Zimmer

Plaintiff alleges that Zimmer was deliberately indifferent to his needs by withholding or denying him pain medication and antibiotics following the amputation of his toe. What medication Plaintiff received on any given day remains disputed. As such, Defendant Zimmer is not entitled to summary judgment on Count 3.

Plaintiff also alleges that Zimmer retaliated against him filing grievances by threatening to have him put in segregation. To prevail on his First Amendment retaliation claim, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and, (3) the First Amendment activity was 'at least a motivating factor' in the Defendant's decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) *quoting Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). Here, Plaintiff cannot satisfy all three prongs. While Plaintiff has a First Amendment right to make grievances, there is no evidence on the record that

he suffered any sort of deprivation inflicted by Zimmer (specifically being put in segregation). Accordingly, Zimmer is entitled to summary judgment on Count 4.

### Wexford Health Sources, Inc.

Plaintiff claims that Wexford Health Sources, Inc. violated the Eighth Amendment by enacting a policy which prevented Plaintiff from receiving timely medical care. Specifically, Plaintiff alleges that through collegial review, Wexford unconstitutionally denies proper referrals and adequate healthcare.

A private corporation that has contracted to provide essential government services (i.e., to provide healthcare services to the Illinois Department of Corrections) is subject to liability under Section 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). "In a case against a private contractor that provides healthcare to incarcerated people, the 'critical question' for liability is 'whether a municipal (or corporate) policy or custom gave rise to the harm (that is, caused it).'" *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653-654 (7th Cir. 2021) *citing Glisson v. Indiana Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017).

No bright-line rules regarding the quantity, quality, or frequency of conduct needed to prove a widespread custom or practice under *Monell* have been adopted by the Seventh Circuit. *Thomas v. Cook Cty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010). "[W]hat is needed is evidence that there is a true municipal [or corporate] policy at issue, not a random event." *Howell*, 987 F.3d at 655 *citing Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008); *see also Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir. 1993) (requiring "a pattern or a series of incidents of unconstitutional conduct").

Here, Plaintiff has failed to produce evidence that Wexford has a policy or custom to deny proper referrals and adequate healthcare through the collegial review process. Plaintiff's only evidence relates to the collegial review process with Dr. Siddiqui and Dr. Ritz in his specific case. That evidence alone is not sufficient to satisfy the *Monell* standard for liability. Therefore, Wexford is entitled to summary judgment on Count 2 of Plaintiff's Complaint.

## Conclusion

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment on Count 1 against Dr. Siddiqui (Doc. 112) is **DENIED**.

Wexford Defendants' Motion for Summary Judgment (Doc. 110) is **GRANTED** as to Count 2 (against Wexford Health Sources, Inc.) and Count 4 (against Defendant Mary Jo Zimmer) and **DENIED** as to Count 1 (against Defendant Dr. Mohammed Siddiqui and Defendant Dr. Stephen Ritz) and Count 3 (against Defendant Dr. Mohammed Siddiqui and Defendant Dr. Stephen Ritz). This case will be set for a status conference to select a firm trial date.

**IT IS SO ORDERED.**

**DATED: April 2, 2024**

**STACI M. YANDLE**
**United States District Judge**